**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Konica Minolta Business
Solutions, U.S.A., Inc.,

      Plaintiff,             Case No. 2:06-cv-71

v.

                                 JUDGE GRAHAM

Allied Office Products, Inc.
et al.,

      Defendants.

**OPINION AND ORDER**

This matter is before the Court on the joint Motion of Plaintiff-Counterclaim Defendant Konica Minolta Business Solutions, U.S.A., Inc. ("KMBS") and Third-Party Defendant Gary Ell ("Ell") to: 1) dismiss the Third-Party Complaint filed by Defendants-Third-Party Plaintiffs Allied Office Products, Inc. ("Allied") and Jon McCarthy ("McCarthy") (collectively, "Defendants"); 2) dismiss certain counterclaims contained in Defendants' Joint Counterclaim against KMBS; and, 3) dismiss or stay Defendants' remaining counterclaims pending arbitration ("Motion to Dismiss") (Doc. 13). Defendants filed their opposition to the Motion (Doc. 16). KMBS and Ell filed a Reply Brief supporting their Motion (Doc. 18). Finally, Defendants moved for leave to file a Sur-Reply Brief, which was granted (Doc. 19).

Since the briefing of the Motion to Dismiss, McCarthy filed for Chapter 13 Bankruptcy in this District; consequently KMBS's claims against him on the Guarantee and for unjust enrichment have been stayed pursuant to 11 U.S.C. § 362(a)(1). The Court gave the parties the opportunity to submit memoranda with respect to whether they sought to have the remaining claims and counterclaims stayed

pending the resolution of McCarthy's bankruptcy proceedings.

Defendants requested that the Court stay all other claims and counterclaims in this matter due to McCarthy's bankruptcy proceedings, provided that the Court first rule on the pending Motion to Dismiss, as the Court's ruling may be dispositive of some or all of Defendants' counterclaims and third-party claims (Doc. 27). Defendants requested that if the Court grants the Motion to Dismiss, it not stay the proceedings so that they may appeal the Court's ruling or proceed to arbitration, and if the Court denies the Motion to Dismiss it stay all proceedings pending the resolution of McCarthy's bankruptcy proceeding. KMBS and Ell ask that all other pending claims and counterclaims be stayed pending the resolution of McCarthy's bankruptcy proceedings.

For the following reasons, the Motion to Dismiss is **GRANTED IN PART AND DEFERRED IN PART.** The Court dismisses the Third-Party Complaint against Ell without prejudice, dismisses Allied's 1999 counterclaims with prejudice, and stays Allied's 2004 counterclaims pending arbitration. The Court will defer ruling on whether to stay Mr. McCarthy's defamation counterclaim pending further briefing from the parties. The remaining claims, i.e. KMBS's claims against Allied, are hereby stayed pending the resolution of McCarthy's bankruptcy proceedings.

I. <u>**Procedural History**</u>

KMBS is a New York corporation with its principal place of business in New Jersey, formed through the merger of Minolta Co., Ltd. and Konica, Inc., in 2003. Ell has been employed by Minolta since 1998 and by KMBS after the 2003 merger. He is an Ohio resident.

Allied is an Ohio corporation with its principal place of business in Ohio. McCarthy is the majority shareholder and CEO of Allied and is an Ohio resident.

Both KMBS and Allied sell or distribute office equipment and accessories including copy machines. The nexus of the parties' relationship is that at certain times relevant to the parties' claims, Allied has been an authorized dealer of products manufactured or distributed by KMBS by virtue of a "dealer agreement."

**A.  KMBS's Complaint**

KMBS lists four causes of action in its Complaint (Doc. 1). First, KMBS alleges Allied failed to pay and is in default on a Promissory Note ("the Note"), executed on or about December 22, 2004, by McCarthy as the President of Allied in the amount of $89,574.06. (Pl.'s Compl. ¶¶ 7-12, Ex. A.) According to the Complaint, the Note was entered into to cover outstanding account receivables that Allied owed to KMBS.

Second, KMBS alleges that Allied and KMBS continued to do business after McCarthy executed the Note, but Allied did not pay on this outstanding account ("the Account") and owes an additional $5,029.89 on top of what Allied owes on the Note. (Pl.'s Compl. ¶¶ 13-16, Ex. B.)

Third, KMBS alleges that McCarthy executed an unconditional personal guarantee ("the Guarantee") in his individual capacity and guaranteed prompt payment of all of Allied's indebtedness to KMBS, including but not limited to the principal, interest and costs on the Note and the Account such that the amount McCarthy owes on the Guarantee is $94,603.95. (Pl.'s Compl. ¶¶ 17-23, Ex. C.)

3

Fourth, KMBS claims Defendants have been unjustly enriched by their failure to pay monies owed to KMBS. (Pl.'s Compl. ¶¶ 24-28.)

This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332.

**B.   Defendants' Counterclaims and Third-Party Complaint**

Defendants filed a Joint Answer and "Joint and Several Counterclaim and Joint and Several Third-Party Complaint" (Doc. 3). In a subsection entitled "Facts Common to All Claims," Defendants allege that Allied was a dealer of office products manufactured or distributed by KMBS pursuant to a series of "Dealer Agreements" between the parties, including a 1999 Dealer Agreement[1] ("1999 Dealer Agreement") (Defs.' Ans., Counterclaim, and Third-Party Compl., Ex. 1) and a 2004 Dealer Agreement ("2004 Dealer Agreement") (Id. at Ex. 2). Allied and KMBS were also parties to other written agreements including:  the Major Account Program Representative Agreement ("MAP Agreement") (Id. at Ex. 3), the National Account Pricing Proposal Agreement ("NAPP Agreement") (Id. at Ex. 4), and the Hilliard Church of Christ Agreement (Id. at Ex. 5). Allied alleges counterclaims for breach of contract, tortious interference, and defamation. McCarthy also alleges a counterclaim for defamation.

**1.   Breach of Contract**

**a.   1999 Dealer Agreement**

Allied maintains that it notified "Konica" on or about

---

[1]

This agreement was executed on April 1, 1998, but appears to have governed the conduct of the parties into 1999, when the events giving rise to these counterclaims occurred.  Neither party has alleged that this agreement did not govern the parties' relationship in 1999.

November 15, 1999, that a competitor had sold, delivered, and installed a copier within Allied's exclusive sales and maintenance territory in violation of the 1999 Dealer Agreement. "Konica" allegedly failed to compensate Allied or take action against the competitor in violation of the 1999 Dealer Agreement. Defendants attached a copy of the "notice" McCarthy faxed to Fred Slavin of Minolta on November 15, 1999, as Exhibit 6 to their Answer, Counterclaim, and Third-Party Complaint.

### b.   2004 Dealer Agreement

Allied claims that KMBS breached the 2004 Dealer Agreement by sending a certified letter to McCarthy on or about June 9, 2005, informing him that Allied breached the 2004 Dealer Agreement by allegedly failing to meet the annual Sales Quota set forth in the 2004 Dealer Agreement (Defs.' Ans., Countercl., and Third-Party Compl., Ex. 7) and through the actions of KMBS representatives who allegedly informed Allied's customers that Allied was no longer an authorized Konica dealer. Defendants attached a letter from Allied's counsel dated July 8, 2005 describing in more detail KMBS's alleged breach. This letter, incorporated into the Counterclaim and Third-Party Complaint as Exhibit 8, states that around June 1, 2005, Ell introduced an Allied competitor to an Allied customer and advised Allied's customer that Allied was no longer an authorized Konica Minolta dealer and that the competitor would be handling the account going forward.

Allied then asserts that KMBS further violated the 2004 Dealer Agreement by accelerating all payments due under the Note on December 7, 2005, as a result of KMBS's wrongful termination of the 2004 Dealer Agreement, and by terminating Allied's "cash with order

discount" on September 9, 2005.  (Defs.' Ans., Countercl., and Third-Party Compl., Ex. 9.)

Finally, Allied maintains that before and after Allied's counsel sent its July 8, 2005 letter to KMBS, KMBS and Ell intentionally and maliciously took action to violate the rights "guaranteed to Allied under the 2004 Dealer Agreement," the MAP agreement, the NAPP agreement, and the Hilliard Church of Christ Agreement.

### 2.   Tortious Interference

#### a.   1999 Claim

Allied alleges that KMBS interfered with its existing and prospective business relationships and business opportunities by refusing to take action after the November 15, 1999 notification of the competitor's sale and installation of a Konica Minolta product in Allied's sales territory.

#### b.   2004 Claims

Allied claims that after KMBS wrongfully declared that Allied breached the 2004 Dealer Agreement, KMBS took "certain actions" against Allied that deprived it of its contractual rights to service and maintain equipment leasing agreements with the Hilliard Church of Christ under the MAP and Hilliard Church of Christ Agreements and consequently interfered with its relationships with the Hilliard Church of Christ.

Allied then claims that it was a party to at least thirty separate equipment leasing agreements with Micro Electronics, Inc. ("Micro Electronics"), and that those agreements were subject to the terms and conditions of the NAPP Agreement.  Allied claims that KMBS and Ell tortiously interfered with the existing Micro

Electronics agreements and Allied's future business relationship with Micro Electronics.

Finally, Allied asserts that in the spring of 2005, Tim McElfresh ("McElfresh") told Ell he was considering going back to work at Allied, to which Ell allegedly replied that McElfresh should avoid Allied and McCarthy and that KMBS had pulled accounts from Allied. Ell also allegedly told McElfresh that Allied was having financial problems and that KMBS intended to terminate Allied as an authorized dealer. McElfresh, allegedly based on Ell's information, decided against working for Allied. Allied asserts that KMBS and Ell thus tortiously interfered with its prospective business relationship with McElfresh.

### 3. Defamation

In the last cause of action, Defendants claim that in connection with the breaches of contract and tortious interferences, KMBS and Ell defamed Defendants. Specifically, Defendants claim that KMBS and Ell advised representatives of NiSource, Inc., the Hilliard Church of Christ, Micro Electronics, McElfresh and forty other unnamed individuals orally or in writing that Allied was no longer or soon would not be an authorized Konica representative when, in fact, Allied was an authorized Konica representative. Defendants claim that these statements were made specifically and maliciously to destroy Allied's business relationships. Defendants also reassert that Ell told McElfresh to avoid Allied and McCarthy.

### C. KMBS and Ell's Pending Motion

KMBS and Ell's Motion seeks three actions from this Court. First, KMBS and Ell seek dismissal of Defendants' Third-Party

Complaint against Ell for two reasons: 1) because there is a lack of diversity of citizenship between Defendants and Ell as they are all Ohio residents, and 2) because the third-party claims against Ell are separate and independent from the original claims KMBS brought against Defendants and therefore are improper third-party claims under Rule 14 of the Federal Rules of Civil Procedure.

Second, KMBS asks the Court to dismiss all claims which occurred in 1999 or resulted from the 1999 Dealer agreement because: 1) the 1999 Dealer Agreement contained a one-year statute of limitations for suits between the parties from the accrual date of the cause of action, or, the claims are nevertheless barred under the applicable statutes of limitations; 2) because the 1999 Dealer Agreement contained a forum selection clause mandating that any claims between the parties be filed exclusively in a federal or state court in New Jersey, Allied's claims relating to the incidents taking place in 1999 are not properly before this Court; and, 3) any claims Allied might have had under the 1999 Dealer Agreement are barred because the 2004 Dealer Agreement superseded the 1999 Dealer Agreement.

Last, KMBS argues that all of Defendants claims are subject to an arbitration provision contained in the 2004 Dealer Agreement. As such, KMBS maintains that all of Defendants remaining claims must be dismissed or stayed pending arbitration.

## II.   **Third-Party Complaint against Ell**

Defendants assert that Ell told Allied customers including Micro Electronics, NiSource, the Hilliard Church of Christ and McElfresh in the spring and summer of 2005 that Allied was no longer, or soon would not be, an authorized Konica dealer, that

8

KMBS pulled the NiSource account from Allied, and that Allied was having financial problems. Defendants assert that these statements constitute tortious interference by KMBS and Ell and defamation by KMBS and Ell. Defendants argue that they were "compelled [to] name Mr. Ell as a party to this action because, simply put, it was Ell's intentional and malicious actions against [them] which gave rise to Konica's claims against them for breach of promissory note, account, and personal guarantee." (Defs.' Mem. in Opp. 3.) Defendants offered affirmative defenses to KMBS's Complaint that incorporate the facts of their Counterclaim and Third-Party Complaint, namely that KMBS did not have the legal grounds to accelerate any and all payments due under the Note. (Defs.' Ans., Countercl., and Third-Party Compl. 5.)

Rule 14(a) provides that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). "However, such third-party practice, or impleader, is permitted only where the defendant can show that if it is found liable to the plaintiff, then the third party will be liable to the defendant." Indep. Liberty Life Ins. Co. v. Fiduciary & Gen. Corp., 91 F.R.D. 535, 537 (W.D. Mich. 1981).[2] Defendants' claims against Ell are not dependent in any

---

[2]
    In Independent Liberty Life, the plaintiff opposed the defendant's motion to add parties, namely members of the plaintiff insurance company's board of directors, and moved to strike the third-party complaint alleging claims against the directors. 91 F.R.D. at 536. The court granted the defendant's motion to add the directors as parties and overruled the plaintiff's motion to strike the third-party complaint, despite the fact that the directors were not proper third-

way on Defendants' liability to KMBS for failure to pay on the Note, the Account, and the Guarantee, or for unjust enrichment, nor is Ell secondarily liable to Defendants on any of these claims.

Defendants assert that Rule 19(a)(1) of the Federal Rules of Civil Procedure compelled them to name Ell as a party to this action because KMBS's original claim against Defendants and Defendants claims against Ell involve a common nucleus of operative fact, complete relief cannot be had among KMBS and Defendants without Ell's involvement. Defendants argue that although Ell's addition would purportedly destroy this Court's jurisdiction, this Court may exercise supplemental jurisdiction over Defendants' claims against Ell under 28 U.S.C. § 1367.

When defendants wish to assert a counterclaim against both the original plaintiff and a nonparty, the correct procedure is not a counterclaim and third-party complaint under Rule 14(a), but rather a counterclaim and a Rule 13(h) motion to join additional parties to a counterclaim under Rule 19. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1446 (2d ed. 1990); Fed. R. Civ. P. 13(h). Although Defendants attempt to argue that Ell must be made a party to this action under Rule 19, no such motion is pending before the Court and it would therefore be improper for the Court to consider these arguments at this time.

Accordingly, KMBS's and Ell's Motion to Dismiss the Third-

---

party defendants, relying on Fed. R. Civ. P. 13(h) and 20, noting that joining parties "is a matter highly dependent on judicial discretion." <u>Id</u>. at 537 (citing <u>Mosley v. GMC</u>, 497 F.2d 1330 (8th Cir. 1974)). The court also noted that the defendant argued that the directors could properly be joined as counter-defendants under Rule 13(h). <u>Id</u>. As discussed, <u>infra</u>, Defendants have not made any such arguments invoking Rule 13, though they also seem to argue that joinder is proper under Rule 19. The Court finds these arguments to be premature.

Party Complaint is well-taken and it is hereby dismissed without prejudice.  Because Ell is not a proper third-party defendant, the Court need not address KMBS and Ell's jurisdictional arguments.

### III. <u>Claims for Incidents Occurring in 1999</u>

KMBS argues that Allied's counterclaims based on the 1999 Dealer Agreement for breach of contract and tortious interference should be dismissed either because the causes of action are time-barred by the one-year statute of limitation for any causes of action between the parties contained in the 1999 Dealer Agreement, or under the New Jersey statutes of limitations, which are six years for breach of contract and tort claims, respectively.  <u>See</u> N.J.Stat.Ann. § 2A:14-1 (2006).[3]  KMBS next argues that the 2004 Dealer Agreement superseded the 1999 Dealer Agreement and by accepting the 2004 Agreement, Allied waived any claims under the 1999 Dealer Agreement.  Finally, KMBS argues that all claims must be brought in the state or federal courts in New Jersey as provided by the mandatory forum selection clause in the 1999 Dealer Agreement, such that this Court is not the proper forum for these counterclaims.

Allied argues that their counterclaims are not barred by the 1999 Dealer Agreement's contractual statute of limitations or the applicable New Jersey statutes of limitations because the date on which Allied gave notice to KMBS of the alleged sales territory violation, November 15, 1999, was not the accrual date of the breach, or the date of the tortious interference.  Allied asserts

---

[3]
KMBS points out that the 1999 Dealer Agreement provides that it "shall be governed by, interpreted and enforced in accordance with the laws of the State of New Jersey."  Allied does not argue against the application of New Jersey law to either the breach of contract claim or the tortious interference claim.

that the breach and the tortious interference resulted from KMBS having notice of the alleged sales territory violation yet failing to act on the notice.  Allied argues that this Court may properly exercise supplemental jurisdiction over the 1999 claims despite the 1999 Dealer Agreement's forum selection clause.  Finally, Allied argues that KMBS has failed to present any evidence or law showing that a breach of the 1999 Dealer Agreement "is controlled" by the 2004 Agreement.

### A.   Standard of Review

KMBS moved to dismiss these claims under Federal Rule of Civil Procedure 12(c) "or otherwise."  Rule 12(c) states: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard for reviewing motions under Rule 12(c) is the same as the standard under Rule 12(b)(6), such that the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of its claim which would entitle it to relief."  Treinen v. Vill. of Greenhills, No. 1:05-cv-448, 2006 U.S. Dist. LEXIS 44340, at *5 (S.D. Ohio Jun. 29, 2006) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)).

If a court fails to exclude outside evidence presented in conjunction with a Rule 12(c) motion, the motion must be converted into one for summary judgment under Rule 56.  Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc., 452 F.3d 494, 503 (6th Cir. 2006).  However, Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an

exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c); <u>Grubb v. Ryan Int'l Airlines, Inc</u>., No. C-3-92-499, 1996 U.S. Dist. LEXIS 22532, at *24 n.6 (S.D. Ohio Mar. 18, 1996). Accordingly, in considering KMBS's Motion, this Court expressly excludes any evidence outside of the pleadings, to the extent that any was presented, but considers all exhibits and attachments to Defendants' counterclaims, which includes the 1999 Dealer Agreement providing the clause at issue, as provided under Rule 10(c).  The Court also accepts all allegations Allied made against KMBS and Ell in its counterclaims relating to the incidents arising in 1999 as true for the purposes of ruling on this Motion to Dismiss.

**B.   Allied's 1999 Counterclaims are time-barred under the 1999 Dealer Agreement**

Under Ohio law, parties may limit the time under which they have to bring actions to that which is less than provided by the applicable statute of limitations, provided that period of time is reasonable. <u>Sarmiento v. Grange Mut. Cas. Co.</u>, 835 N.E.2d 692, 698 (Ohio 2005); <u>see</u> <u>also</u> <u>Booher v. Daimler Group, Inc</u>., No. 90AP-615, 90AP-653, 1990 Ohio App. LEXIS 5717, at *11 (Ohio Ct. App. Dec. 20, 1990).  The law is the same in New Jersey.  <u>Azze v. Hanover Ins. Co.</u>, 765 A.2d 1093, 1097 (App. Div. 2001); <u>see</u> <u>also</u> <u>Ribeira & Lourenco Concrete Constr. v. Jackson Health Care Assoc</u>., 554 A.2d 1350, 1354 (N.J. App. 1988), <u>aff'd</u>,571 A.2d 1311 (per curium).[4]

---

[4]

Although KMBS cites to New Jersey law, presumably because the 1999 Dealer Agreement states that the Agreement shall be "governed by, interpreted and enforced in accordance with the laws of the State of New Jersey without regard to its principles of conflicts of laws."  However, under Ohio's choice-of-law rules, which this Court is bound to apply (<u>Rosen v. Chrysler Corp</u>., 205 F.3d 918, 921 n.2 (6th Cir. 2000)), if two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict. <u>Mecanique C.N.C., Inc. v. Durr Envtl.,</u>

Here, the parties expressly agreed that any suit between them, other than for payment of the purchase price of the products, must have been commenced within one year of the accrual of the cause of action arising between the parties. (Defs.' Ans., Countercl., and Third-Party Compl., Ex. 1, ¶20(a).) Notably, Allied has not argued that this clause is unreasonable or invalid in any way, nor does Allied argue that this clause does not apply to its 1999 breach of contract and tortious interference counterclaims.

KMBS asserts that any breach of the 1999 Dealer Agreement, or any tortious interference arising out of its actions in failing to rectify another dealer's alleged sale, delivery, and installation of a copier within Allied's exclusive territory, occurred on or about November 15, 1999, when Allied notified KMBS of this situation. Allied argues that the November 15, 1999, fax was the date they asked KMBS to perform, not the date of KMBS's "full and final rejection" of that request. Allied argues that KMBS failed to show when the accrual date for either the breach of contract action or the tortious interference claim occurred, and instead has only shown that those claims accrued sometime _after_ the notification fax of November 15, 1999.

Even under Allied's tenuous interpretation of the accrual of these causes of action, it is clear that KMBS only had a "reasonable" amount of time to rectify the situation with the other

---

Inc., 304 F. Supp. 2d 971, 957 (citing Akro-Plastics v. Drake Indus., 685 N.E.2d 246, 248 (Ohio Ct. App. 1996)). "Where the party seeking application of the law of a foreign jurisdiction fails to demonstrate a conflict between local law and the law of that jurisdiction, local law . . . governs." Id. (citing Gouge v. BAX Global, Inc., 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003) (citations omitted)).

Because KMBS has failed to demonstrate a conflict between Ohio and New Jersey law on this issue, and because the Court has found no conflict, the Court will apply Ohio law.

dealer before it breached its contract with Allied and tortiously interfered with Allied's business or prospective business relationships with Allied's customer. Defendants filed their counterclaims on March 8, 2006. Under the plain and unambiguous language of the parties agreement, "any suit between the parties" must have been commenced within one year of its accrual date, meaning that for these counterclaims not to have been time-barred by the one-year limitation in the 1999 Dealer Agreement, the earliest they could have conceivably accrued would have been March 8, 2005, or one year prior to Defendants filing of their counterclaims. This is, of course, well over six years from the date of Allied's "request" to KMBS that it "perform" by rectifying the other dealer's sale of a copier in Allied's territory on November 15, 1999. Allied's counterclaims arising from events in 1999 are time- barred by the parties' own agreement, and are hereby dismissed with prejudice.

The Court finds KMBS's argument that the 1999 counterclaims must have been filed in New Jersey due to the mandatory[5] forum selection clause contained in the 1999 Dealer Agreement compelling, because, under both Sixth Circuit and Ohio law, such a forum selection clause is valid and enforceable if the contract is

_____

[5]

The clause reads in pertinent part:

[d]ealer . . . agrees that any and all causes of action between Minolta and Dealer, whether or not arising under this Agreement, shall only have jurisdiction and venue in the state or Federal courts situated within the State of New Jersey.

On the basis of the language of exclusivity in the clause and Sixth Circuit precedent, this forum selection clause is mandatory, not permissive. General Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1099 (6th Cir. 1994) ("Because the clause states that 'all' disputes 'shall' be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory.")

commercial in nature and was not the product of fraud or overreaching.[6] However, it would be inefficient and unreasonable for the Court to decline to exercise supplemental jurisdiction over these counterclaims, only for another court to dismiss them on the basis that they are time-barred by the plain and unambiguous language of the 1999 Dealer Agreement.

## IV.  **Remaining Counterclaims**

Defendants remaining counterclaims against KMBS and Ell involve the 2004 Dealer Agreement and actions that occurred in 2004. In accordance with the Court's determination that Ell is not a proper third-party defendant in this case and the dismissal of the Third-Party Complaint against him without prejudice, the Court will only discuss these remaining counterclaims with respect to Ell in Ell's apparent capacity as an agent for KMBS.

KMBS argues that all of these claims are subject to the arbitration provision in the 2004 Dealer Agreement. Therefore, KMBS asserts that these claims must be dismissed or stayed pending arbitration. The 2004 Dealer Agreement provides:

> Except for claims arising out of a breach of ¶15 - Patents and Trademarks, ¶21 - Intellectual Property Rights or ¶22 - Confidentiality, any dispute arising out of or relating to this contract or the breach, termination or validity thereof shall be finally settled by arbitration conducted expeditiously in accordance with the American Arbitration Association Commercial Arbitration Rules . . . . [a]ny claim arising out of or

---

[6] The standards governing the enforceability of forum selection clauses under Ohio law and federal law are the same. Preferred Capital, Inc. v. Assoc. In Urology, 453 F.3d 718, 721 (6th Cir. 2006) (citing General Electric Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1098 n.3 (6th Cir. 1994). Courts examine: whether the contract is commercial in nature; 2) the absence of fraud or overreaching; and, 3) whether enforcement of the forum selection clause would be otherwise unreasonable or unjust. Id. (citing Info Leasing Co. V. Jaskot, 784 N.E.2d 1192, 1195-96 (Oh. Ct. App. 2003)).

> relating to this Agreement or the breach, termination or
> validity thereof, must be brought within one (1) year of
> its accrual or it shall be deemed waived.

KMBS argues that it is entitled to a stay of the proceedings involving the 2004 counterclaims under the Federal Arbitration Act, 9 U.S.C. § 1 et seq ("FAA").

Neither KMBS nor Defendants distinguish between Allied's counterclaims and McCarthy's individual defamation counterclaim, but rather lump Defendants together for their respective discussions. The Court will first discuss Allied's counterclaims in light of KMBS's Motion and will discuss McCarthy's defamation counterclaim separately.

Allied argues that its counterclaims are not subject to arbitration for the following reasons: 1) KMBS waived its right to demand arbitration because it initiated suit in this Court; 2) KMBS waived its right to demand arbitration because it failed to bring any of its own claims within a year of their accrual as specified by the arbitration clause; 3) Allied's counterclaims for tortious interference and defamation are not contract claims, and thus fall outside the scope of the arbitration clause; 4) all of the counterclaims stem from violations of the 2004 Dealer Agreement's confidentiality clause, and, therefore, by the terms of the arbitration clause, are not subject to arbitration. The Court will discuss these arguments in turn.

### A. Waiver

Allied argues that KMBS waived its right to arbitrate Allied's counterclaims arising from the 2004 Dealer Agreement in two ways: first, by waiting for over a year to bring its own claims against Defendants in contravention of the arbitration clause and second,

by bringing its own claims against Defendants in this Court instead of making a demand for arbitration.[7] KMBS counters that it did not waive its rights to arbitrate by filing suit in federal court or by waiting for over a year to bring its claims against Defendants because its claim on the Note is independent and separate from the 2004 Dealer Agreement. KMBS therefore asserts that its claims are not subject to the arbitration clause in the 2004 Dealer Agreement, and are not related to the counterclaims, which it asserts do arise out of or relate to the 2004 Dealer Agreement.

Defendants requested leave to file a Sur-Reply Brief, which was granted, and argued that KMBS's claim on the Note was related to the 2004 Dealer Agreement by virtue of a December 7, 2005 letter from KMBS representative Thomas Batten that stated: "upon termination of the Dealer Agreement effective September 9, 2005 the total amount outstanding under the Promissory Note became immediately due and payable." (Defs.' Ans., Countercl. and Third-Party Compl., Ex. 9.). The letter further stated that Allied's failure to repay the Note on September 9, 2005 made it ineligible to receive any "cash with order" discount. (Id.) Thus, Defendants argue that KMBS's suit on the Note is "inextricably tied to the legal question [of] whether Konica had lawful grounds to terminate the 2004 Dealer Agreement." (Defs.' Sur-Reply 3.)

---

[7]
Defendants state in their Memorandum in Opposition, "[i]nasmuch as Konica waited for more than one year from the date of accrual of its alleged breach of contract claim against Defendants until it filed the instant lawsuit, and inasmuch as Konica never sought arbitration from the issuance of its notice of breach letter on November 5, 2004 until it filed its Motion to Dismiss or Stay on April 26, 2006, it is submitted that Konica waived its right to prosecute any of its claims for breach of contract against Defendants in either this Court or through arbitration." (Defs.' Mem. In Opp. 11.)
To the extent that Defendants' arguments can be interpreted as seeking dismissal of KMBS's claims, these arguments are not properly before this Court and the Court will not consider them.

1.    **Procedure**

Section 3 of the Federal Arbitration Act states that:

 [i]f any suit or proceeding be brought in any of the
 courts of the United States upon any issue referable to
 arbitration under an agreement in writing for such
 arbitration, the court in which such suit is pending,
 upon being satisfied that the issue involved in such suit
 or proceeding is referable to arbitration under such an
 agreement, shall on application of one of the parties
 stay the trial of the action until such arbitration has
 been had in accordance with the terms of the agreement,
 providing the applicant for the stay is not in default in
 proceeding with such arbitration.

9 U.S.C. §3.  This Court has noted that when considering a motion
to dismiss or stay due to an arbitration provision, a court must
determine: 1) whether the parties agreed to arbitrate; 2) the scope
of that agreement; 3) if federal statutory claims have been
asserted, whether Congress intended those claims to be non-
arbitrable; and 4) if some, but not all, claims are subject to
arbitration, whether the remainder of the proceeding should be
stayed pending arbitration.  Manuel v. Honda R&D Americas, Inc.,
175 F. Supp. 2d. 987, 990 (S.D. Ohio 2001) (ruling on a motion to
dismiss or stay pending arbitration).  In examining factors one and
three, it is clear that the parties have agreed to arbitrate
certain claims, and that no federal statutory claims exist in this
case.  Accordingly, the Court will focus on factors two and four:
determining the scope of the agreement to arbitrate and, if some
claims are subject to arbitration, what disposition should be made
of claims not subject to the arbitration agreement.

The Supreme Court has recognized and enforced a "'liberal
federal policy favoring arbitration agreements,'" Howsam v. Dean
Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)(citing Moses H. Cone

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)),
however, "[t]he question whether the parties have submitted a
particular dispute to arbitration, i.e., the 'question of
arbitrability,' is 'an issue for judicial determination unless the
parties clearly and unmistakably provide otherwise.'" Id. (citing
AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643,
649 (1986) (emphasis in original); First Options of Chicago, Inc.
v. Kaplan, 514 U.S. 938, 944 (1995)); see also Compuserve, Inc. v.
Vigny Int'l Finance Ltd., 760 F.Supp. 1273, 1278 (S.D. Ohio 1990)
(noting "[t]he question of whether a controversy is arbitrable
under the contract is a question for the Court to decide upon an
examination of the contract") (citations omitted).

   In Howsam, the Court noted that the question of arbitrability
is "applicable in the kind of narrow circumstance where contracting
parties would likely have expected a court to have decided the
gateway matter, where they are not likely to have thought that they
had agreed that an arbitrator would do so, and, consequently, where
reference of the gateway dispute to the court avoids the risk of
forcing parties to arbitrate a matter that they may well not have
agreed to arbitrate." Id. at 83-84. In contrast to "gateway
disputes" of arbitrability are "procedural" issues, which are for
an arbitrator, not a judge, to decide. Id. at 84. As the Court
noted in Howsam, with respect to procedural issues, the
"presumption is that the arbitrator should decide 'allegations of
waiver, delay, or a like defense to arbitrability.'" Id. (citing
Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

   The Court followed the precedent set in the Revised Uniform
Arbitration Act of 2000 noting that "prerequisites such as time

limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" are matters presumptively for the arbitrator to determine.  Id. at 85 (quoting RUAA § 6, comment 2, 7 U.L.A., at 13) (finding that the National Association of Securities Dealers' time limit rule was a procedural dispute and did not implicate questions of arbitrability).

Questions regarding the scope of arbitration agreements are governed by federal law under the FAA, though courts may apply state law to invalidate an arbitration agreement if the state's law governs the validity, revocability, and enforceability of contracts generally.  Zucker v. After Six, Inc., 174 Fed. Appx. 944, 946 (6th Cir. 2006) (citing Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987)). No party in this case has raised any issues regarding the validity or enforceability of the 2004 Dealer Agreement itself.

Though the Supreme Court in Howsam cited prior case law which stated that the validity of a waiver defense is to be determined by the arbitrator, the Court finds that the specific issue of whether KMBS waived its right to obtain a dismissal or stay of Allied's counterclaims pending arbitration by first filing its own claims in this Court was not addressed by the Supreme Court in Howsam.  Nor does it appear that any subsequent Supreme Court or Sixth Circuit Court of Appeals decision has addressed this specific type of "waiver" issue.

The First Circuit Court of Appeals in Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 27 (1st Cir. 2005), noted that the "overwhelming weight of pre-Howsam authority . . . held that waiver due to litigation conduct was generally for the court and not for the arbitrator [to decide]."  The court continued by recognizing

that under the FAA itself, "a court is only permitted to stay a court action pending arbitration if 'the applicant for the stay is not in default in proceeding with such arbitration,'" where a default has generally been defined as including a waiver. Id. at 29 (quoting 9 U.S.C. § 3).  The court also discussed important policy considerations in permitting courts, rather than arbitrators, to decide the specifically-framed issue of waiver through litigation-related activity. Id. at 31-32.  The court held that the Supreme Court in Howsam, and later in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003), "did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court."  Id. at 34; see also Dantz v. Am. Apple Group, LLC, 123 Fed. Appx. 702, 707 (6th Cir. 2005) (noting that "[u]nder the FAA, a party can waive a right to arbitrate . . . [m]oreover, waiver can be implied by a defendant's actions in pursuing litigation"). Accordingly the Court will consider Allied's argument that KMBS waived its right to arbitrate Allied's counterclaims by filing its own claims in this Court.

### 2.  Merits

The general rule regarding waiver is that the right to arbitrate is waived "'when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration.'" Systran Fin. Svc. Corp. v. Giant Cement Holding, Inc., 252 F. Supp. 2d 500, 506 (N.D. Ohio 2003) (quoting Unwaydah v. Van Wert County Hosp., 246 F. Supp. 2d 808 (N.D. Ohio 2002). While neither party has briefed the issue of what law governs the waiver argument, the Northern District of Ohio has noted that the

issue of arbitrability under the FAA is a matter of federal law. Id. at n.5 (applying federal law to the issue of "arbitrability" with respect to allegations of waiver). The court noted that the following factors may be examined to determine if a party has waived the right to arbitrate: 1) filing responsive pleadings while not asserting a right to arbitration; 2) filing pretrial motions; 3) engaging in extensive discovery; 4) using discovery methods not available in arbitration; 5) litigating issues on the merits; 6) the length of delay in invoking an arbitration right and seeking a stay; 7) the proximity of the trial date; 8) the prejudice to the opposing party; and 9) whether the party has filed a counterclaim. Id. (quoting Southern Sys., Inc. v. Torrid Oven Ltd., 105 F. Supp. 2d 848, 852 (W.D. Tenn. 2000)).

KMBS asserted that Allied's counterclaims are subject to arbitration as an affirmative defense in its Answer to Defendants' Counterclaims. (KMBS's Ans. 7.) KMBS has filed the pending pretrial motion, and has also sought to dismiss Allied's counterclaims arising out of events that occurred in 1999, but otherwise has not filed any pretrial motions, dispositive or otherwise. It does not appear from the docket, or from the briefs of the parties, that either party has engaged in extensive discovery. Further, once Defendants filed their counterclaims on March 7, 2006, and after a stipulated extension of twenty days, KMBS filed its Answer on April 20, 2006, and the pending Motion on April 26, 2006. This case is set for trial on September 5, 2007.[8]

---

[8]

When KMBS and Ell filed their Joint Motion on April 26, 2006, this case was not set for trial, and in fact was not set for trial until November 7, 2006 (Docs. 22 and 23).

Therefore, the only two factors which could possibly show that KMBS has waived the right to arbitrate Allied's counterclaims are: 1) the alleged prejudice to Defendants in spending time and money in litigating their counterclaims before this Court, and 2) the fact that it was KMBS who initially brought this action before the Court and chose this forum to resolve claims that Defendants argue are arbitrable claims under the 2004 Dealer Agreement.

McCarthy states he has already incurred legal fees over $8,000.00 to investigate and defend against KMBS's claims, and thus he and Allied have therefore been prejudiced by KMBS's "choice to litigate this matter rather than submit it to arbitration." (Defs.' Mem. in Opp., Ex. 1, Affidavit of Jon McCarthy ¶ 9).[9] Though he does not specify what these costs were for, it would appear that the bulk of this expense would have been incurred by Defendants presenting their own counterclaims, which, in Allied's case, it could have chosen to arbitrate from the outset. It is likely that even had KMBS attempted to arbitrate all of its claims, Allied and McCarthy still would have incurred some of the same expenses in investigating and defending against those claims as well as pursuing their own claims. Simply defending claims on a Note and an account stated in this Court is not prejudicial to Allied, even if its own counterclaims proceed in arbitration. And, in light of all of the other factors which weigh in favor of

---

[9]

While it would be improper to consider this Affidavit in the context of a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgement, as it was not part of the pleadings in this case, it is "proper (and in fact necessary) to consider such extrinsic evidence" when considering a motion to stay pending arbitration. See BS Sun Shipping Monrovia v. Citgo Petroleum Corp., No. 06 Civ. 839, 2006 U.S. Dist. LEXIS 54588, at *11 n.6 (S.D. N.Y. Aug. 8, 2006).

arbitration of Allied's counterclaims, any possible prejudice to Allied is not enough to show that KMBS waived the right to arbitrate Allied's counterclaims.

Turning to the issue of KMBS initiating litigation in this court, other courts have noted that "the invocation of the judicial process merely creates a presumption of waiver which, in a variety of circumstances, may be rebutted or rescinded." Design Benefit Plans, Inc. v. Enright, 940 F.Supp. 200, 203 (N.D. Ill. 1996) (citing Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995)). When applying this principal to the situation here, namely, whether a plaintiff who brings suit on potentially arbitrable claims waives the right to arbitrate a defendant's counterclaims, courts have only found waiver where the legal and factual issues in the original claims and the counterclaims are the same. See id. (no waiver where the counterclaims the plaintiff sought to arbitrate did not stem from the same legal and factual issues as the plaintiff's claims); Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 390 (1st Cir. 1993) (no waiver where counterclaim was distinct from plaintiff's claims); OCMC, Inc. v. Billing Concepts, Inc., No. 1:05-cv-1396, 2006 U.S. Dist. LEXIS 25852 (S.D. Ind. May 3, 2006) (defendant did not waive right to arbitrate where it had initiated a separate lawsuit against the plaintiff that involved different legal and factual issues). Likewise, courts have found a plaintiff waives his right to arbitrate a defendant's counterclaims that implicate the same or similar legal and factual issues by initiating litigation in court. Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 420, 428 (S.D.N.Y. 1998) (finding

that the plaintiff, in filing suit for trademark infringement and unfair competition, waived the right to arbitrate on the defendant's counterclaims for unfair competition, misappropriation, and unjust enrichment which raised many of the same legal and factual issues, but not on the defendant's breach of contract counterclaim because it was legally and factually distinct).

The 2004 Dealer Agreement provides that upon termination of the Agreement, "Dealer shall immediately pay to KMBS all sums outstanding and owing by Dealer to KMBS whether or not yet due." (Defs.' Ans., Countercls. and Third-Party Compl., Ex. 2, ¶13(d)(v)). In his December 7, 2005, letter to McCarthy, KMBS's Assistant National Credit Manger, Thomas Batten, stated, "[y]our attention is drawn to the fact that Allied formalized its obligation to repay the account receivables balance which had arisen during its tenure as a KMBS Dealer by executing and delivering a Promissory Note dated December 1, 2004 in the principal amount of $90,276.90 . . . . Allied only repaid a small amount under that Promissory note prior to September 9, 2005 . . . . upon termination of the Dealer Agreement effective September 9, 2005 the total amount outstanding under the Promissory Note became immediately due and payable." (Id. at Ex. 9.) The letter goes on to state, "this letter serves as a formal demand for payment of the aggregate amount of $91,574.04 which represents unpaid principal, interest and acceleration charges due and outstanding under the Promissory Note and an additional $5,189.11 due for the accounts receivable balance." (Id.) The Note does not contain an arbitration provision, nor does the Note reference or incorporate the 2004 Dealer Agreement. KMBS argues that the Note is separate

26

from the 2004 Dealer Agreement and so by suing on the Note, KMBS did not waive its right to arbitrate Allied's counterclaims. However, whether or not KMBS's claims arise out of or relate to the 2004 Dealer Agreement, it is clear that KMBS did not waive its right to arbitrate Allied's counterclaims by first filing suit in this Court because KMBS's claims do not raise the same factual and legal issues as do Allied's counterclaims. Allied's counterclaims for breach of the agreements between the parties, tortious interference, and defamation raise distinct legal and factual issues, separate from the issues raised by KMBS's claims. While it may be that any actions taken by KMBS could ultimately affect what, if any, monies Allied owe to KMBS due a setoff or through the merits of its counterclaims, the counterclaims themselves are not legally or factually related to KMBS's claims.

Additionally, the Court finds that there was no clear intent from KMBS to waive the right to arbitrate Allied's counterclaims because the Note on which KMBS sued is independent of the 2004 Dealer Agreement, and the Note contains no arbitration clause. The only possible nexus between the 2004 Dealer Agreement and the Note is the acceleration clause for the termination of the 2004 Dealer Agreement. Yet, as previously noted, the Note itself does not contain an arbitration clause and does not reference or incorporate the 2004 Dealer Agreement. For these reasons, the Court finds that KMBS has not waived the right to arbitrate Allied's counterclaims by filing suit on its own claims in this Court.

### 3. Time-Limit

Allied also argues that by waiting for over a year to bring its claims against Defendants, KMBS waived the right to compel

arbitration of Allied's counterclaims under the language of the arbitration clause, which provides that "[a]ny claim arising out of or relating to this Agreement or the breach, termination or validity thereof, must be brought within one (1) year of its accrual or it shall be deemed waived." This argument makes little sense, as any time limitations imposed by the 2004 Dealer Agreement only serve to bar a party's own claims. Further, once Allied filed its counterclaims against KMBS, KMBS promptly sought to arbitrate them. Accordingly, the Court finds that KMBS did not waive its right to seek a stay of Allied's counterclaims pending arbitration by allegedly waiting for over one year to bring its own claims in this Court.

**B.   Defendants' Remaining Arguments Against Arbitration**

The Court finds no merit in Allied's final arguments, namely that its tortious interference and defamation counterclaims do not fall within the scope of the arbitration agreement because they sound in tort and not contract, and that the counterclaims are excluded by the arbitration provision because they arise out of the confidentiality provision of the agreement. In examining these arguments, the Court is again mindful of the "'liberal federal policy favoring arbitration agreements,'" Howsam, 537 U.S. at 83 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25), and that any doubts concerning whether a claim is arbitrable should be construed in favor of arbitration, AT&T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

The 2004 Dealer Agreement defines confidential information as:

[t]rade secrets and all information not publicly available and which gives the owner of the information a competitive advantage in the industry, including but not

limited to, information encompassed in software, related
source and object codes, technology, circuit diagrams,
instruction manuals, technical specifications, electronic
artwork, designs, plans, flow charts, proposals,
marketing and sales plans, financial information, costs,
pricing information, and ideas that are reasonably
related to the business of the parties that have not been
previously publicly released, and all other information
that has been marked 'Confidential.'

Under Section 22 of the 2004 Dealer Agreement, the parties were to
"maintain all Confidential Information provided by the other party
in confidence," and were not to "disclose or permit any third
person or entity access to the other party's Confidential
Information without prior written permission[.]"  The Arbitration
Clause expressly excludes claims arising out of a breach of the
confidentiality clause of the 2004 Dealer Agreement.  Allied claims
that statements KMBS or Ell allegedly made to Allied's customers
and to McElfresh regarding Allied's financial condition, the
quality of its service, its status as an authorized dealer, and its
relationships with its customers were "proprietary and confidential
matters[.]" (Defs.' Mem. In. Opp. 15.)  Allied also concedes,
however, that these statements "were direct violations . . . of the
Code of Conduct provisions of ¶3(a), (b), (c), (d) and ¶5 of
Schedule C of the 2004 Dealer Agreement[.]" (Id.)  It does not
appear that the provisions designed to protect the proprietary and
confidential information of the parties, including trade secrets,
technology, and cost and pricing information, would apply to
Allied's allegations of KMBS's tortious conduct.

Further, as KMBS points out, "Schedule C - Code of Conduct" to
the 2004 Dealer Agreement contemplates and covers the precise
situation Allied alleges occurred, stating "[n]either KMBS nor

Dealer shall make any defamatory, disparaging or negative statements concerning the other or relating to any other authorised Konica Minolta dealer, KMBS product or KMBS service . . . . [w]ithout limiting the generality of the foregoing, neither KMBS nor Dealer shall make any statement or comment regarding the other's: a) financial condition; b) quality of its service department or service personnel; c) future status as an authorized KMBS dealer, including the intentions of Konica Minolta; [and] d) relationships with its customers and former customers and relationships with its employees and former employees." The Code of Conduct specifically provides that the parties agreed that if any disputes between them could not be resolved, either party could request a hearing before a member of the Business Technology Association [BTA], Industry Relations Committee, and if the BTA was unable to resolve the dispute within a reasonable time it would appoint an arbitrator to investigate the complaint under the rules of the American Arbitration Association Commercial Arbitration Rules. It is thus readily apparent that all of Allied's counterclaims arising from KMBS's allegedly advising Allied's customers that it was no longer an authorized Konica dealer, interfering with Allied's relationships with its customers, stating that Allied was having financial troubles, no matter how they are framed, fall under the purview of the Code of Conduct.

While it is not clear to this Court whether the intermediate steps leading up to arbitration of the counterclaims arising from alleged breaches of the Code of Conduct have been taken by either party, it is clear that Allied's counterclaims, including the claims for tortious interference and defamation, are explicitly

covered by the Code of Conduct provision of the 2004 Dealer Agreement and therefore "arise from or relate to" the 2004 Dealer Agreement, and so must be stayed pending arbitration. That the Code of Conduct itself provides for arbitration of disputes only reinforces this conclusion.

Accordingly, the Court orders Allied to proceed with the arbitration of all of its 2004 counterclaims.

### C. McCarthy's Counterclaim for Defamation

McCarthy has also alleged that he was defamed by KMBS. McCarthy is not a party to the 2004 Dealer Agreement containing the arbitration clause, as the Agreement was entered into by KMBS and Allied, as the "Dealer." McCarthy signed the 2004 Dealer Agreement as the President of Allied. The parties did not brief the issue of whether McCarthy's counterclaim against KMBS should be arbitrated, as he was not a signatory to the 2004 Dealer Agreement in his individual capacity, and if not, if the counterclaim should be stayed pending arbitration. The Court finds it cannot compel McCarthy, a non-signatory to the 2004 Dealer Agreement in his individual capacity, to arbitrate his counterclaim against KMBS despite his apparent agency relationship with Allied. See Clausen v. Watlow Elec. Mfg. Co., 242 F. Supp. 2d 877, 883 (D. Or. 2002) (plaintiff who signed agreement with defendant as agent for the plaintiff's company was not bound to the terms of the company's agreement to arbitrate disputes with defendant merely by the fact that the plaintiff signed the agreement as the company's agent). Therefore, the question remains whether his counterclaim should be stayed pending arbitration of Allied's counterclaims, or stayed pending the resolution of his bankruptcy proceeding.

31

Further, McCarthy's counterclaim for defamation will now be part of his bankruptcy estate, for which the Court presumes the trustee of the estate should be substituted as the real party in interest for this counterclaim.  The Court thus defers ruling on whether McCarthy's claim should be stayed, and will grant both parties until **Thursday, January 11, 2007** to submit memoranda for the Court's consideration as to whether they would like this counterclaim to be stayed pending the arbitration of Allied's counterclaims, or stayed pending the resolution of McCarthy's bankruptcy proceeding, and whether the bankruptcy trustee should be substituted as the real party in interest for this counterclaim.

**V.    Stay of KMBS's Claims Pending Bankruptcy**

KMBS has requested a stay of all remaining claims and counterclaims pending the resolution of McCarthy's bankruptcy proceedings (Doc. 31).  It is well-established that the decision of whether to grant a stay is within a court's inherent power and is discretionary.  Landis v. North Am. Co., 299 U.S. 248, 254-255 (1936).

Outside of Mr. McCarthy's defamation counterclaim, after staying the claims against McCarthy, dismissing the third-party complaint against Ell and the 1999 counterclaims, and staying Allied's remaining 2004 counterclaims pending their arbitration, the only claims which remain "active" in this case are KMBS's original claims on the Promissory Note, the Account, and for unjust enrichment against Allied.  As KMBS has compellingly indicated in its Memorandum in Support of a Stay of All Claims, there is an identity of interest between McCarthy as debtor, and Allied, the company of which he is the sole officer and operator, such that the

defendants close identity warrants a stay of KMBS's claims against Allied pending McCarthy's bankruptcy proceedings.  Additionally, equity and judicial economy would be well-served by a stay. Accordingly, KMBS's claims against Allied are stayed pending the resolution of McCarthy's bankruptcy proceedings.

**VI.  <u>Conclusion</u>**

In summary, the Court dismisses the Third-Party Complaint without prejudice because Ell is not a proper third-party defendant; the Court dismisses Allied's counterclaims based on actions occurring in 1999 with prejudice because they are time-barred by the language of the 1999 Dealer Agreement; the Court stays Allied's remaining counterclaims arising out of events occurring in 2004 pending arbitration and orders Allied to proceed with the arbitration of these counterclaims; and the Court stays KMBS's claims against Allied pending the resolution of Defendant McCarthy's bankruptcy.  The Court defers ruling on whether to stay McCarthy's defamation counterclaim and the parties should submit memoranda on or before Thursday, January 11, 2007 as to the issue of whether to stay Mr. McCarthy's defamation counterclaim against KMBS and whether the bankruptcy trustee should be substituted as the real party in interest to this counterclaim.

It is so ORDERED.

<u>s/James L. Graham</u>
JAMES L. GRAHAM
United States District Judge

DATE: December 27, 2006

33