**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Konica Minolta Business
Solutions, U.S.A., Inc.,

              Plaintiff,                         Case No. 2:06-cv-71

v.

                                             JUDGE GRAHAM

Allied Office Products, Inc.
et al.,

              Defendants.

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by plaintiff Konica Minolta Business Solutions, U.S.A., Inc. (Konica) against defendant Jon D. McCarthy (McCarthy) and Allied Office Products, Inc. (Allied).   Konica seeks judgment on a promissory note and guaranty, an action on an account, and for unjust enrichment. Konica also seeks judgment in its favor on McCarthy's defamation counterclaim.

**I.**       <u>**Factual Background and Procedural History**</u>

Konica is a New York corporation with its principal place of business in New Jersey, formed through the merger of Minolta Co., Ltd. and Konica, Inc., in 2003. Allied is an Ohio corporation with its principal place of business in Ohio.  McCarthy is the majority shareholder and CEO of Allied and is an Ohio resident. Both Konica and Allied sell or distribute office equipment and accessories including copy machines. The nexus of the parties' relationship is that at certain times relevant to the parties' claims, Allied was an authorized dealer of products manufactured or distributed by Konica by virtue of a "dealer agreement."

Pursuant to the dealer agreement, Allied was assigned a sales quota, which identified the number of units to be sold and revenue to be generated by Allied, to wit:

1

$949,287.48, by March 31, 2005.  As a dealer, Allied was permitted to participate in Konica's National Account Program, which is designed to allow Konica and its dealers to service accounts that are national in scope.  On November 5, 2004, Konica informed Allied that its year-to-date sales were well below the sales quota.  In addition, Allied was behind in payments to Konica for equipment.  On December 22, 2004, McCarthy executed a promissory note on behalf of Allied and a personal guaranty in the amount of $90,276.90.

By mid-April, 2005, Konica had received complaints regarding Allied's service and determined that it could no longer support Allied as a representative of Konica's national account program.  Allied was notified of this decision in May 2005.  In June 2005, Konica advised Allied that its sales amounted to less than 14% of the sales quota required under the dealer agreement and gave Allied sixty days in which to cure its breach.  When Allied failed to do so, the dealer agreement was terminated, effective September 9, 2005.   Allied ceased making any payments on its promissory note as of July 2005.  In addition to the remaining amount owed on the note, in its complaint Konica alleges that Allied owed $5, 029.89[1] to Konica for equipment purchased after January 2005.

On January 30, 2006, Konica filed its complaint alleging breach of a promissory note, breach of a personal guaranty, action on an account, and unjust enrichment. Defendants filed a joint answer, counterclaim and third party complaint on March 7, 2006.  In their counterclaim, Allied and McCarthy made claims for breach of contract, tortious interference with contract and defamation.  Specifically, Defendants asserted that Konica breached its 1999 and 2004 dealer agreement with Allied by allowing a third party to sell Konica products in Defendants' exclusive geographical area.   Defendants

---

[1]

Konica now alleges that Allied owes $6,168.05 on the account.

2

third party complaint was against Gary Ell, an employee/agent of Konica for tortious interference and defamation.

On April 26, 2006, Konica filed a motion to dismiss the claims against Ell and Konica based on the 1999 dealer agreement and sought to stay the remaining claims pending arbitration. While the motion to dismiss was pending, McCarthy filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio. On December 27, 2006, this court granted Defendant Ell's motion to dismiss, without prejudice, finding that Ell was not a proper third-party defendant.  This court also dismissed the defendants' claims based on the 1999 Dealer Agreement as time-barred by the plain language of the agreement between the parties and stayed Allied's claims based on the 2004 Dealer Agreement pending arbitration. Because McCarthy was not a party to the dealer agreement which contained the arbitration clause, his individual defamation claim was not stayed pending arbitration. However, McCarthy's individual defamation claim was stayed pending a determination by the bankruptcy court regarding whether the defamation claim was a "core proceeding" under 28 U.S.C. §157(b).  Konica's remaining claims were also stayed pending the resolution of the bankruptcy proceedings.

On August 20, 2007, the Bankruptcy Court entered an order adopting a Chapter 13 plan for McCarthy[2].  As part of the bankruptcy proceedings, Konica filed a proof of claim for $95,200.22, relating to the personal guaranty signed by McCarthy.  Konica's proof of claim was accepted by the bankruptcy court and was not disputed by McCarthy. Pursuant to the Chapter 13 plan Konica would receive 2% of the total claim, or $1,904.00. The Bankruptcy Court also entered an agreed order granting a relief from the stay in order to permit Konica and McCarthy to pursue the remaining claims before

---

[2]        The Bankruptcy case was apparently recently converted to a Chapter 7 case. (See doc. 75, p. 8, fn 1).

this court. The remaining claims are Konica's claims against McCarthy and Allied, and McCarthy's claim for defamation.

Pursuant to court order, on October 29, 2008, McCarthy filed a Notice of Filing of Statement of Defamation and Damages in which he clarified the factual basis of his defamation claim. (doc. 50). Essentially, McCarthy alleges that there were three defamatory statements made against Allied prior to the termination of the business relationship between the parties. This matter is now before the court on Konica's motion for summary judgment. Konica asserts that it is entitled to judgment on its own claims against Allied and McCarthy. Konica further asserts that McCarthy has failed to show the evidence of material questions of fact that would bar summary judgment on his defamation claim. The matter is before this court on diversity jurisdiction pursuant to 28 U.S.C. §1332.

## II.    Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper  "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465.

4

"Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III. Legal Discussion

"In a diversity action, a federal court applies the choice of law rules of the state in which the court sits. See, Extracorporeal Alliance, L.L.C. v. Rosteck, 285 F. Supp. 2d 1028, 1036 (N.D. Ohio, 2003). Under Ohio law, subject to limited exceptions, courts should apply the law of the state chosen by the parties to a contract to govern their contractual rights and duties. Ohayon v. Safeco Ins. Co., 747 N.E.2d 206, 209 (Ohio 2001). Absent such a choice by the parties, Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract. Id. at 477,

209. To determine which state has the most significant relationship to the contract, Ohio has adopted the test set forth in the Restatement 2d of Conflict of Laws, § 188. Gries Sports Enterprises, Inc. v. Modell, 473 N.E.2d 807, 810 (Ohio 1984). Under the Restatement test, the Court will consider such facts as the place of contracting, the place of negotiating the contract, the place of performance, the location of the subject matter of the contract, and  the domicile, residence, nationality, place of incorporation and place of business of the parties. Id.

The promissory note and personal guaranty state that they shall be "construed under, governed by, and enforced in accordance with the laws of the State of New York."  However, both parties cite to Ohio law in support of their positions and neither has invoked the choice of law provisions of the promissory note and guaranty.[3] Nor has either party suggested that New York and Ohio law differ on the issues raised in the action on the note and personal guaranty. In addition, Konica's claims for action on an account and unjust enrichment as well as McCarthy's claim for defamation fall outside the confines of the promissory note and/or guaranty.  Thus, the choice of law provisions in those documents would not apply.  Finally, Ohio has the more significant relationship to the controversy.  Allied is an Ohio corporation and McCarthy is a citizen of Ohio. Allied's authorized territory under the dealer agreement was entirely within the State of Ohio and the alleged defamatory comments took place in the State of Ohio.  In addition, McCarthy's bankruptcy case, at which Konica filed its proof of claim on the guaranty,

---

[3]     Allied and McCarthy do, however, argue that the choice of law provision robs this court of subject matter jurisdiction.  Defendants misunderstand the effect of a choice of law provision.  Subject matter jurisdiction refers to "the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes a court and is to be sought in the general nature of its powers, or in authority specially conferred."  Barnett & Assocs v. Smith, No. 86-261, 1987 Tenn. App. LEXIS 3164 (Ct. App. Tn, Feb. 4, 1987)(quoting Cooper v. Reynolds, 77 U.S. 308, 316 (1870))(stating that the California choice of law provision in no way effects the subject matter of the Tennessee courts).

was filed in the Southern District of Ohio. Thus, the Court will apply Ohio law to the substantive issues at hand.

**A.    Defamation**

Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame, or disgrace, or affects him adversely in his trade or business. Sweitzer v. Outlet Communs., Inc., 726 N.E.2d 1084, 1088 (Ct. App. Ohio 1999).  When a private individual alleges a cause of action for defamation, he must present evidence of the following five elements of the claim: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault or at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff." Davis v. Jacobs, 710 N.E.2d 1185, 1186 (Ct. App. Ohio 1998).    The fourth element of "fault" is determined by whether the alleged defamer "acted reasonably in attempting to discover the truth or falsity or defamatory character of the publication." Franks v. Lima News,  672 N.E.2d 245, 248 (Ct. App. Ohio, 1996)(quoting Embers Supper Club v. Scripps-Howard Broadcasting Co., 457 N.E. 2d 1164, 1167 (Ohio 1984)). Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo.  Gosden v. Louis, 687 N.E.2d 481,488 (Ct. App. Ohio 1996).

McCarthy alleges that Konica made three defamatory statements for which it should be held liable:

> 1)    On June 22, 2005, McCarthy received an email from Terry Hitzeman of Microelectronics (Micro Center) stating that a representative from another company (Capital Copy) had advised Micro Center that it was the only authorized Minolta dealer in Central Ohio, even though Allied was still an authorized dealer on that date.  McCarthy alleged that the Capital Copy representative must have been falsely informed by a Konica representative that Allied was not an authorized dealer.

2.      On or about June 6-8, 2005 Konica representative Gary Ell accompanied a representative of Capital Copy to a meeting with Micro Center representative Terry Hitzeman.  McCarthy alleged, without "specificity as to the words spoken," that Ell must have made defamatory statements because "soon thereafter Micro Center refused to renew all of its existing copier leases with Allied."

3.      On or about June 22, 2005, Allied was removed from Konica's website of authorized dealers which implied a false statement of premature removal as an authorized dealer.

(doc. 50).

In order for McCarthy's defamation claim to withstand summary judgment, he must establish that a false and defamatory statement was made about him.  The three statements which McCarthy relies upon were not made about him individually but rather about his company, Allied Office Products.  "It is well-settled that a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation." Adair v. Wozniak, 492 N.E.2d 426, 428 (Ohio 1986); Trebilcock v. Elinksy, No. 1:05 CV 2428, 2006 U.S. Dist. LEXIS 6495 (N.D. Ohio Feb. 21, 2006)(generally, even a sole shareholder of a corporation cannot maintain an action in his individual name to redress injuries sustained by the corporation). McCarthy asserts however that because he signed a personal guaranty, he suffered an injury that was separate and distinct from other shareholders and therefore can bring an action for injuries sustained by the corporation. McCarthy is correct that a "personal guarantee for a loan to the corporation may serve as the basis for an individual cause of action by a shareholder." Emerson v. Bank One, Akron, N.A., No. 20555, 2001 Ohio 1765 (Ct. App. Ohio Nov 14, 2001)(citing Adair, 492 N.E. 2d 426)). However, " in order for wrongdoing which injures a shareholder to be individually actionable, the wrongdoing must be

closely connected with the guarantee contract on which the shareholder is basing the suit." Id. Here, McCarthy claims he was injured when the corporation was defamed. Any relationship the defamation claim has to the personal guaranty is tenuous at best.

However, even if McCarthy could show injury caused by the alleged defamation against Allied, McCarthy has not met his burden to withstand summary judgment because the statements were not defamatory.  Furthermore, McCarthy has not presented sufficient evidence to establish that the statements were even made by Konica's representatives.

### a. First Defamatory Statement

McCarthy first bases his defamation claim on an statement allegedly made by a Micro Center representative to Capitol Copy indicating that Allied was no longer an authorized dealer.  However, McCarthy has provided no evidence as to the actual defamatory statement nor when it was made and only assumes that it was made by Konica representative Gary Ell.   At his deposition, McCarthy admitted that he has no evidentiary basis to support his first allegedly defamatory statement:

> Q.:    As it relates to this first defamatory comment, can you tell me what was the false statement that Mr. Ell made to Capital Copy that forms the basis of this first defamatory statement?
>
> A.:    I don't know.
>
> * * *
>
> Q.    Do you have any – let me ask it this way, this defamatory statement to Capital Copy by Mr. Ell, do you know when that statement was made? As it relates to this first defamatory comment.
>
> A.    No, I do not know when it was made.

(McCarthy deposition, doc. 75-2 at p. 74)

9

It is amply clear that there is no evidence to support the first generalized defamatory statement McCarthy seeks to basis his defamation claim upon.  McCarthy has no evidence as to what the content of the alleged statement was let alone that anyone from Konica made such statement.  Accordingly, this cannot form the basis of a defamation claim against Konica.

### b.    Second defamatory statement

The second defamatory statement McCarthy cites relates to an alleged statement from Gary Ell to Terry Hitzeman during a June 8, 2005 meeting with Capital Copy representatives.  McCarthy admits, however, that he does not know what, if anything, Ell said at the meeting.  (doc. 75-2, p. 77-78, stating that he cannot speak to specific words because McCarthy was not in the meeting with Ell and Hitzeman).  Rather, McCarthy assumes that Gary Ell "lied to the customer Micro Center and told them that we were no longer an authorized dealer."  (doc. 75-2 p. 77).  McCarthy does not have any actual knowledge that Mr. Ell made any such statement, but testified that because of the fact that Micro Center never did business with Allied again, Ell must have made this statement.  (Id).  However, Ell and Hitzeman, who both attended the meeting, agree that Ell only stated that Konica would no longer be supporting Allied as a representative of the National Account Program going forward.  (Ell deposition, doc. 75-9 p. 36;  p. 36-38; Hitzeman depo doc. 75-11 p. 42-43).  This statement was a true statement because prior to the meeting, Konica had decided to pull Allied's accounts because Allied could not longer service those accounts and had notified Allied of this fact.  (doc. 75-10; doc. 75-2 p. 37-38). Thus, even if McCarthy were able to provide evidence of an actual statement made by a Konica representative, he cannot establish

that any such statement was false.   McCarthy's claim based on the second alleged

statement must fail. McPeek v. Leetonia Italian-American Club, 882 N.E.2d 450, 453

(Ct. App. Ohio 2007) ("Truth is an absolute defense against a claim of defamation").

      Finally, McCarthy cannot base his defamation claim on the second statement

because he failed to plead and prove special damages.  The statement that Allied is no

longer an authorized dealer is not defamatory on its face (defamation per se) but is only

defamatory through interpretation or innuendo (defamation per quod). Gosden v. Louis,

687 N.E.2d 481,488 (Ct. App. Ohio 1996). ("Defamation per se occurs when material is

defamatory on its face; defamation per quod when material is defamatory through

interpretation or innuendo").  In order to make a claim based on defamation per quod,

McCarthy must plead and prove special damages, which are "damages of such a

nature that they do not follow as a necessary consequence of the [complained injury]."

Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne, 916 N.E.2d 484, 488

(Ct. App. Ohio 2009) (citations omitted).  Although McCarthy has asserted special

damages in the form of Micro Center refusing to renew his contracts, he cannot provide

any evidence that Micro Center did so because of the alleged defamatory statement.

McCarthy testified that he never contacted Hitzeman to determine why Micro Center did

not renew the Allied contracts but assumed it had to do with the alleged defamatory

statements.  (doc. 75-2 p. 151-152). However, McCarthy also admitted that he had

been aware of the fact that Micro Center had been unhappy with some of Allied's

service in the past. (Id p. 58). In addition, Micro Center representative Terry Hitzeman

testified that he did not renew Allied's contracts because of past service issues and that

the decision to not renew had nothing to do with any statements indicating that Allied

was no longer participating in the national account program at Konica.  (doc. 75-11 p.

75-76).  Thus, McCarthy's second allegedly defamatory statement does not

provide a basis for his defamation claim.

### c.    Third Defamatory Statement

The third defamatory statement McCarthy alleges is not a statement but rather

an action, namely, that Konica removed Allied from the list of authorized dealers on its

website.  According to McCarthy, this removal implied a false statement to the public.

As with the second alleged defamatory statement, McCarthy is making a claim for

defamation per quod because the removal of Allied from the website was not

defamatory on its face.  Rather, removal from the website only becomes defamatory

when "determined by the interpretation of the listener, through innuendo, as being

either innocent or damaging."  Shoemaker v. Cmty. Action Org. of Scioto County, Inc,

No. 06CA3121, 2007 Ohio 3708 (Ct. App. Ohio July 16, 2007)(citations omitted).

Although the removal of Allied as an authorized dealer on the Konica website

could be construed by potential Allied clients as a statement that Konica had terminated

its relationship with Allied and thereby negatively impact Allied in its trade or

occupation,  it could also have an equally plausible innocent interpretation.  For

instance, a potential Allied client might believe that Allied was removed from the list of

authorized dealers because Allied had chosen to stop servicing Konica products or that

an error had been made on the website mistakenly removing Allied from the dealer list.

Because there is both a defamatory and an innocent way to interpret the removal of

Allied from the Konica website, the "innocent construction rule" therefore "bars recovery

for statements susceptible of two meanings, one innocent and one potentially

defamatory." <u>Kanjuka v. Metrohealth Med. Ctr.,</u> 783 N.E.2d 920, 928 (Ct. App. Ohio

2002); <u>McGee v. Simon & Schuster</u>, 154 F. Supp. 2d 1308,1313 fn 4 (S.D. Ohio 2001)

(Ohio's innocent construction rule "requires that a statement reasonably susceptible to

both a defamatory and an innocent meaning must be construed, as a matter of law, to

have an innocent meaning.").

As the plaintiff has failed to raise any genuine issues of material fact that would

allow a reasonable jury to conclude that he was personally defamed by Konica, his

claim for defamation must fail.

### B. Res Judicata Bars Review of Konica's Claim Against McCarthy on the Promissory Note.

On August 20, 2007, the Bankruptcy Court entered an order adopting a

Chapter 13 plan for McCarthy.  As part of the bankruptcy proceedings, Konica filed a

proof of claim for $95,200.22, relating to the personal guaranty signed by McCarthy and

on which the instant suit was brought. Konica's proof of claim was accepted by the

bankruptcy court and was not disputed by McCarthy. Pursuant to the plan adopted,

Konica would receive 2% of the total claim, or $1,904.00.  Although McCarthy

did not dispute Konica's proof of claim based on the personal guarantee, promissory

13

note and account at the bankruptcy court level he now disputes the validity of the guaranty and promissory note on the grounds that it lacked consideration.

A claim is barred by res judicata if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies;  (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.  Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir. 1995). As all the elements of res judicata are met in this case, McCarthy is barred from collaterally attacking the bankruptcy court order that confirmed Konica's proof of claim for $95,200.02.

The first element of res judicata is met because the confirmation of a plan of reorganization "constitutes a final judgment in bankruptcy proceedings."  Sanders Confectionery Prods. Inc. v. Heller Fin. Inc., 973 F.2d 474, 480 (6th Cir. 1993); In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991) (confirmation of a plan by the bankruptcy court "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.").  Second, both Konica and McCarthy were parties to the instant case as well as the bankruptcy case.  Third, McCarthy could have objected to Konica's proof of claim at the bankruptcy court level on the grounds that the promissory note and guaranty lacked consideration or he could have specifically reserved the right to contest the validity of Konica's claim. See, Holly's Inc. v. City of

14

Kentwood (In re Holly's Inc.), 178 B.R. 711, 715 (W.D. Mich. 1995) (res judicata barred debtor who failed to object to proof of claim by city or to reserve the right to object to the amount of taxes being claimed from relitigating the issue). Finally, the fourth element is met because Konica's proof of claim and McCarthy's argument that there was a lack of consideration both focus on the same document: the personal guaranty.[4]

This court is barred from disturbing the final order of the bankruptcy court by the doctrine of res judicata. Accordingly, the court cannot consider McCarthy's belated argument that there was no consideration underlying the promissory note. The parties are bound by the decision of the bankruptcy court under which Konica is entitled to $1,904.00. Because the personal guaranty cannot be disputed at this point, Konica's alternative unjust enrichment claim against McCarthy is moot.

### C.        Claim on the Promissory Note Against Allied

A holder of a promissory note "establishes a prima facie case for payment on a note where the note is placed in evidence and the maker's signature is admitted." Cadle Co. v. Toler, No. 90AP-1380, 1991 Ohio App. LEXIS 2520 (Ct. App. Ohio May 28, 1991)(citing Ohio Rev. Code §1303.36(B)); Schlup v. Intermark International, Inc., No. 13900 1989 Ohio App. LEXIS 1306 (Ct. App. Ohio April 12, 1989) ("a signed promissory note constitutes prima facie evidence of the amount due"). Once a prima facie case is established, the burden shifts to the maker of the note to assert any defenses. Id.

---

[4]        Notably, McCarthy previously admitted that a confirmed bankruptcy plan is not subject to collateral attack in future litigation and agreed that a final bankruptcy confirmation order has a res judicata preclusive effect on future proceedings. (See Response to [first] Motion for Summary Judgment, May 2, 2008, doc. 45).

A claim of "lack of consideration is an affirmative defense which must be proved by a preponderance of the evidence." Schlup, 1989 Ohio App. LEXIS 1306.

The undisputed evidence is that Allied entered into a promissory note with Konica for $90,276.90, plus 6% annual interest. McCarthy admits that he signed the promissory note on behalf of Allied and that the note was not paid in full. (Doc 75-2 p. 26; 33). Thus, Konica has established a prima facie case for payment. Allied argues, however, that there was a lack of consideration[5] for the note and that therefore it is unenforceable. In support of its position, Allied argues that the note related to a pre-existing debt owed by Allied to Konica and that there was no present consideration at the time the note was signed. Allied also argues that the consideration for signing the note was that Konica would continue to do business with Allied on a credit basis and that when Konica failed to do so, the consideration underlying the promissory note failed. Finally, Allied argues that the promissory note was an unconscionable adhesion contract. Allied's arguments are without merit.

First, "it is well-settled that a note given as security for an antecedent debt is sufficient consideration to establish a valid obligation under a promissory note. Bertrand v. Lax, No. 2004-P-0035, 2005 Ohio 3261 (Ct. App. Ohio June 24, 2005); Sur-Gro Plant Food Co. v. Morgan, 504 N.E.2d 445, 451 (Ct. App. Ohio 1985) (quoting Ohio Rev. Code §1303.44)("no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind"). Rather

---

[5] In its Answer, Allied raised the affirmative defense of "failure of consideration."

16

than pursuing its contractually guaranteed option to immediately repossess any Konica products (doc. 3-4 p. 3), seek immediate payment (Id) and/or immediately terminate the business relationship with Allied (Id), Konica agreed to accept a signed promissory note. This constituted sufficient consideration for the promissory note.  W. Reserve Farm Coop., Inc. v. Agarwal, No. 2009-G-2892, 2010 Ohio 2950 (Ct. App. Ohio June 25, 2010)   (citing Klamo v. Hobbs No. CA83-02-019, 1983 Ohio App. LEXIS 15906 (Ct. App. Ohio, Aug. 10, 1983)) (the promise of one party to "forbear from prosecuting or pursuing the legal right to collect a debt which is due and owing is sufficient consideration given in exchange for a promissory note").

Second, Allied has provided no evidence to support its contention that under the terms of the promissory note, Konica was obligated to continue doing business with Allied on a credit basis.  The promissory note relates only to the existing trade debt at the time the note was signed.   Allied's argument that there was a lack or failure of consideration underlying the note is without merit.

Allied also asserts that the promissory note is unenforceable because it is an unconscionable adhesion contract. Unconscionability is "generally recognized to include both an absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party." Roe v. Rent-A-Center, Inc., No. CA2007-09-224, 2008 Ohio 4307 (Ct. App. Ohio August 25, 2008)(citing Taylor Bldg. Corp. of Am. v. Benfield 884 N.E.2d 12 (Ohio 2008)). Procedural unconscionability "concerns the circumstances surrounding the formation of

17

the agreement and occurs when no voluntary meeting of the minds was possible."
Porpora v. Gatliff Building Co., 828 N.E.2d 1081, 1083 (Ct. App. Ohio 2005).
Procedural unconscionability "involves those factors bearing on the relative bargaining
position of the contracting parties, e.g.,'age, education, intelligence, business acumen
and experience, relative bargaining power, who drafted the contract, whether the terms
were explained to the weaker party, whether alterations in the printed terms were
possible, whether there were alternative sources of supply for the goods in question.'"
Small v. HCF of Perrysburg, Inc. 823 N.E.2d 19, 23 (Ct. App. Ohio 2004)(quoting
Johnson v. Mobil Oil Corp., 415 F. Supp. 264, 268. (E.D.Mich.1976)). Whether a
contract is adhesive in nature is determined under the procedural unconscionability
prong. Rent-A-Center, Inc., 2008 Ohio 4307 at  p. 7. Substantive unconscionability
refers to the actual terms of the agreement and contract terms are substantively
unconscionable if they are unfair and commercially unreasonable." Porpora, 828 N.E.2d
at 1084.  The party asserting unconscionability of a contract bears the burden of proving
that the agreement is both procedurally and substantively  unconscionable. W. Reserve
Farm Coop., Inc. v. Agarwal, No.2009-G-2892, 2010 Ohio 2950 (Ct. App. Ohio June 25,
2010).

    Allied asserts that the contract was procedurally unconscionable because
McCarthy was given no choice but to sign the contract or "the business would be shut
down." (Doc. 79 p. 15).  Allied further asserts that because Konica considered Allied to
be near insolvency, and because McCarthy was undergoing cancer treatment at the

time, it was procedurally unconscionable for Konica to require him to sign the

promissory note.  Allied's argument is not persuasive. At the time he signed the note on

behalf of Allied, McCarthy was approximately 53 years old and had worked in the

industry for decades, including being a part owner of at least two business equipment

supply companies. (Doc. 77-1 pp. 10-13).  He has a high school education and

completed some college coursework in business management. Id.  McCarthy, on behalf

of Allied,  knowingly entered into the Dealer Agreement with Konica pursuant to which

he was to meet a certain sales quota.   The promissory note merely obligated Allied to

pay the debts which Allied owed to Konica under the Dealer Agreement. Given these

facts, it can hardly be considered a procedurally unconscionable contract.  Nor was the

promissory note substantively unconscionable.  Under the terms of the Dealer

Agreement, Allied was obligated to pay all invoices upon receipt.  The agreement

further provided that if Allied failed to make its payments on time, Konica could

repossess the equipment, refuse to sell to Allied or supply Allied with any additional

products, and/or could choose to immediately terminate the business relationship. (doc.

3-4).  There does not appear to be any question that McCarthy and Allied understood

the requirements of the Dealer Agreement.  Again, the promissory note merely

obligated Allied to pay the debts which it legitimately owed to Konica under the Dealer

Agreement.   Moreover, the promissory note reasonably allowed Allied to repay the debt

over thirty six months, and to make lower payments in the beginning, with an increase

of $500.00 every six months.  The fact that Allied was unable to make those payments

does not make the terms of the note unconscionable.

Because Allied has not established a genuine issue of material fact with regards to the validity of the promissory note, summary judgment in favor of Konica on the note is granted.  Because summary judgment is granted on the promissory note, Konica's alternative unjust enrichment claim against Allied is moot.

      **D.**                   **Action on Account Claim**

Konica also seeks judgment on its claim for an action on an account in the amount of $6,168.05 for equipment and accessories obtained by Allied after the personal guaranty and promissory note were signed. Under Ohio law, a claim arising out of a written instrument or account must be attached to the complaint. See Ohio R. Civ. P. 10(D)(1).  Plaintiff attached a document purporting to be an account to its complaint at Exhibit B.  This document reflects a balance of $5,029.89.  The account attached to plaintiff's motion for summary judgment is different than that which was attached to the complaint and shows additional purchases by Allied for a total of $6,168.05.  Konica did not move to amend the complaint to attach the updated account, and is therefore bound by the document attached to the complaint. Ohio R. Civ. P. 10(D)(1).Accordingly, the court examines this claim using Exhibit B, which shows an outstanding balance of $5,029.89.

Under Ohio law, "an action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid." Taylor Steel, Inc. v. Keeton, 417 F.3d 598, 604 (6th Cir. 2005) (quoting AMF, Inc. v. Mravec,

440 N.E.2d 600, paragraph 1 of the syllabus (Ct. App. Ohio 1981)).  An action on account cause of action "exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action."Baumann, 289 N.E. 2d at 377.

In order to succeed in an action on an account, the plaintiff must "prove both all the elements of the contract and that the contract is one that involves transactions usually the subject of a book account." Keeton, 417 F.3d at 604(citing Am. Sec. Serv., Inc. v. Baumann, 289 N.E.2d 373 (Ct. App. Ohio 1972).  The essential elements of a contract include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration."  Perlmuter Printing Co. v. Strome, Inc., 436 F. Supp. 409, 414 (N.D. Ohio 1976)(citing 1 Williston on Contracts 18 (3rd ed. 1957)). Here, there is no dispute that Allied and Konica were in a contractual relationship whereby Allied acted as an authorized dealer of Konica products.  According to the affidavit of Konica's Senior Regional Credit Manager, Tom Batten, after the promissory note was signed, Allied accumulated additional accounts receivable with Konica. (Aff. at para 12). Apparently, Allied ordered certain products on its account with Konica, which account was attached to Konica's complaint at Exhibit B.  Allied does not dispute that it received the ordered products and does not allege that it was not invoiced for the same. Therefore, plaintiff has established that a contract existed.

Having established that a contract existed, plaintiff must then establish an

21

account, which must show four things: (1) the defendant's name; (2) a beginning

balance, preferably of zero but at least of some other provable sum; (3) an itemized list

of credits and debits; and (4) a means of determining the calculation of the amount

claimed to be owed. Asset Acceptance Corp. v. Proctor, 804 N.E.2d 975, 977 (Ct. App.

Ohio 2004) (quoting Brown v. Columbus Stamping & Mfg. Co.  223 N.E.2d 373, 375

(Ct. App. Ohio 1967).  Exhibit B to Konica's complaint shows Allied's name and

contains a list of credits and debits.  It also shows a sum total owed of $5,029.89.  The

document does not, however, contain a beginning balance of zero, or of any other

provable sum. Rather, it starts with a charge of $10.14 on June 3, 2005, followed

immediately by three credits, on July 11, 14, and 26, 2005 of $1,912.96, $4,000.00, and

$900.00 respectively.  There is nothing indicating what those three payments were for

nor whether they were for debts incurred prior to the earliest date on this accounting

sheet (May 3, 2005).  There is simply no way for the court to ascertain how much Allied

is alleged to have owed at the beginning of this account.  To add to the confusion as to

the amount owed, Allied alleges that it paid at least $11,000.00 to Konica which should

have been deducted either from the amount owed on the account or on the note.

Although Konica argues that Allied should not be able to assert "payment" as a

defense now because it did not raise it in its answer as an affirmative defense, Allied

did raise the defense of "accord and satisfaction."  As "accord and satisfaction" involves

payment, Allied did not waive the affirmative defense of payment.  See, Asset

Acceptance Corp, 804 N.E.2dat 978 (accord and satisfaction when raised as a defense

in an answer satisfies the requirement that "payment" be raised as an affirmative defense).

Of additional concern is the fact that the account attached to the plaintiff's complaint (as well as the updated version attached to the motion for summary judgment) appears to contain duplicate charges. For instance, the accounting sheet shows a charge of $637.65 on July 8, 2005 for "Document No. 32597715" with a due date of August 7, 2005. (Ex. B p.1, line 13). However, on page 2, there is an identical charge of $637.65 on July 8, 2005 for "Document No. 32597715" with a new due date of September 6, 2005. (Ex. B. p. 2 line 2). Further down on page 2, at line 30, there is another charge for on July 8, 2005 for "Document No. 32597715", although this time the amount if off by one cent ($0.01) for $637.66. This type of duplicate accounting occurs with alarming frequency throughout the document and accounts for $24,744.16 of the charges listed.

When every single charge, including all duplicate charges, are added up the total is $36,333.80. The total credits for payment on this account equal $31,238.57. The difference between these two numbers is exactly the amount alleged to be owed: $5,029.89. However, if the duplicate charges are removed, then the total charges on this account sheet are reduced to $11,589.64. Under this accounting, with the $31,238.57 in payments credited to Allied, there is a credit to Allied in the amount of $19,648.93. This would tend to support Allied's assertion that it made payments in excess of $11,000.00.

23

Summary judgment on Konica's action on an account is improper because a genuine issue of material fact remains as to the amount actually due on the account. Konica has failed to provide documentation of the starting balance on the account that would have permitted the court to calculate the total amount due.  See, Great Seneca Fin. v. Felty, 869 N.E.2d 30 (Ct. App. Ohio 2006) (summary judgment on account improper where the plaintiff failed to provide documentation establishing how it reached its beginning balance, making it impossible for the court to calculate the amount due). In addition, there is a genuine issue of material fact, raised by the document itself, as to whether Konica has reached the $5,029.89 balance allegedly owed by improperly or mistakenly posting duplicate charges to Allied's account.

As genuine issues of material fact remain on Konica's action on an account claim, summary judgment on this claim is denied.

## IV.    Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment (doc. 75) is GRANTED IN PART and DENIED IN PART.  Konica's motion for summary judgment on its claim on the promissory note against Allied is GRANTED.  Konica's claim on the personal guaranty is GRANTED.  Konica's motion for summary judgment on McCarthy's defamation claim is GRANTED.  Konica's claim for unjust enrichment is dismissed as moot.  Konica's motion for summary judgment on its claim for action on an account is DENIED.

The court will hold a status conference in the near future in order to set dates for

the final pretrial and trial in this matter.

       IT IS SO ORDERED.

                                  S/ James L. Graham
                                  James L. Graham
                                  UNITED STATES DISTRICT JUDGE

Date:  July 13, 2010